The next case on the docket is 525-0204, Emory Marriage of Rensing. Counsel, are you ready? Good morning. Ms. Johnson, please come in. Yes, ma'am. Okay, you may come up when you're ready. Again, Ms. Luber is here. Okay, I just wanted her to get ready and seated and organized. Okay, Ms. Johnson. May it please the Court, Your Honor, and the Counsel. We are here about a case where the party is divorced in September of 2014. A marital settlement agreement was provided in that divorce where the husband must receive 50% of the marital share of the wife's first pension accumulated during the party's marriage pursuant to the terms of the court order acceptable for processing. Ms. Johnson, can I start with one thing?  Just for clarity's purposes, what is it that were, I mean, what benefits were taken away from your client by the court's default judgment and subsequent new quadro or whatever it was? Not a quadro. No, no, it wasn't a quadro. What was it that was, because the way I initially read it was the marital settlement agreement stated, here are the timeframe of the marriage when she was employed with the Department of Corrections or whatever it was. Sorry, I know what it was. I'm just paraphrasing. And that seems pretty finite. It's going to be any benefits accrued during that period. She obviously continued working, and there were some pay raises, some different things. Are you suggesting that he is entitled to any of that pay raise that she got after the divorce? Well, Your Honor, in many, many divorce cases where the amount of the pension cannot be established on the date of the dissolution, they use the reserve jurisdictional approach. And what they do with that, and in many cases you said, especially in military pensions, which I'm sure this Court has heard many military pension cases, I think one was Whiting, where they used that same approach and the husband came in, and it was the Fifth District case. The husband came in and argued that you can't give her the cost of living increases because they weren't incurred as of the date of the dissolution of marriage. And in that case, this Court actually said that that argument fails. The Court at the time of the dissolution of marriage had the opportunity to reduce the retirement to its present-day value and either award an offsetting or use the reserve jurisdictional approach, which is what they did. That reserve jurisdictional approach is typical when they can't ascertain the amount of the pension at the date of dissolution. The longer the appellee worked, the amount of my client's portion went down and down and down. So his percentage of that amount kept going down the longer she worked. And many courts use that today. It is actually very common. The language that we used in the court order, Acceptable Processing, in 2014, said the OPM shall pay to the former spouse the pro rata share. And that's where the percentage comes in, the pro rata share. The numerator, which is the total number of months that the member participated in the plan during the marriage, and it gives the dates of the marriage, and the denominator, which is the total months of federal civilian service performed by the employee. And so that is exactly what the court order in October of 2014 said when it was entered, the court order Acceptable for Processing. Had the appellee not liked that language, she should have filed an appeal or a 1301, a motion to vacate. Had she not liked that language back then, but the problem is, presently, what she's asking for is the court to take into consideration her salary adjustments. Just like in writing, he's asking the court to take into consideration his cost of living adjustments. The court said, no, you can either do it one way or you can do it the other. The court chose to do it the reserved jurisdictional approach, and that's how it was done. If she didn't like that, she should have brought that up in 2014. But 10 years later, it's modifying a property distribution. In the case in Whiting, they actually used the same language. Half a percentage of a husband's benefits that result from dividing the number of months of marriage by the number of months in military service, it's used continuously. And so this court said that they weren't going to allow that. The cost of living adjustments went in. But what bothers me the most about the clarification, it says in the marriage settlement agreement, it's pursuant to the terms of the court order acceptable for processing as a separate court order. That marriage settlement agreement was prepared by the appellee. The court order acceptable for processing that was signed by both parties, signed by the judge, and entered into the file was prepared by the appellant's attorney. So to come back 10 years later and say, no, I don't like this. I got raised with this. Sorry. He lost income. Not only did he lose income, he also lost, they went backdated it. They backdated it. It's time she retired and said, oh, now he's not getting paid anything. And so he pays her back the overage that he received during the time that the FERS was taking out the amount that they said, we're taking out the amount pursuant to that court order. That was entered in 2014. So in answer to your question, I guess it's a reserved jurisdictional question. The courts use it all the time. What is the basis for jurisdiction in order to reach back so far? Well, the basis for this court, Judge Brandeis, was a default judgment, Your Honor. And so in getting to that. But the default judgment was based on a pleading that was filed by the appellee. And that pleading, my question is, as to that pleading, was there jurisdiction to reach so far back? I don't believe there was, Your Honor, but I couldn't even bring the argument. I didn't even get past. It was the default. Correct. There was a default judgment entered without a motion. No motion was on file. There was no content motion on file. There was no pleading for sanctions on file. In fact, in reading, and this is just last night, and sorry to tell you that, but just last night as I was reading through the transcript, there's not even a royal motion for a default. At the end of the transcript, and you guys have it, I'm sure, and probably have read it, I didn't catch it until yesterday, but there's not even a royal motion for a default made. Again, no motion for default on file. And Judge Powis, who was the one that ordered him to have an answer on file within 14 days, his actual docket entry on December 17th states, Attorney Lubitsch with Petitioner, Respondent Posey, responding to have answer on file within 14 days. This cause is set for hearing a motion for clarification on January 30th at 9 a.m. He does not indicate in anywhere that you're going to be defaulted, Mr. Renzini, if you don't file this answer within 14 days. Well, your client had a history, though, with the court, which is what was brought up, that they weren't confident he was going to be violated. Yes, Your Honor. I think that that was exactly what Judge Braymeyer said in his ruling, is that I'm going to deny the motion to vacate because after review of the entire record, he has failed to follow previous court orders. And I understand that maybe he had failed to follow court orders in the past, but to deny a motion to vacate because he failed to file an answer within the 14 days, this case had only been pending from, I believe it was filed in November. I'm sorry, it was filed in, yes, it was filed in November 14th of 24th. My client appears on December 17th. He's ordered to file an answer. He failed to do that. But he appeared. He appeared on the January 30th date, ready for hearing. And he's defaulted because he asked for time to get an attorney. So, I mean, this is not like a two-year span of time that my client has been failing to file court orders. The appellee actually quoted in her brief, I believe it was Halls v. Jacobs, Jacobs, Camlodeca, and Tupone as a First District case that the court considered as providing orders when ruling on motions to vacate. However, in Halls v. Jacobs and others, a petition for sanctions had been filed in that case against the defendants for not complying with discovery rules. An order was entered, and it was very complete and detailed and said they had to comply within a certain date. Didn't comply. A second motion for sanctions was filed by the attorney, and they didn't comply. Then the court even gave them additional 14 days to comply on that second motion for sanctions. I mean, in the present case, my guy appeared in court twice. He told the judge he attempted to file an answer. He was unable to do so. He wasn't ever notified of a motion for default. He wasn't ever notified that, hey, your ratification or the remedy is going to be a default judgment. And actually... Can you expound just a little bit on his attempts to file? I believe he indicated that he had paid a filing fee from the record, Your Honor. And I wasn't there, of course, but on January 30th. He had paid a filing fee, which sounded approximate, $180. I think it's $189 in Clayton County. So he was pretty close on that. He said he kept filing it, and it kept getting rejected. So he was electronically filing? Yes, he was attempting to electronically file. But, as I said before, you do not know that the ratification was going to be a default judgment against him. And he appeared on both court dates. If the court sets the default aside, what would be the next process in this case? I think it would be a hearing on their motion, Your Honor. But I believe, as an attorney, I would file a motion to dismiss for lack of jurisdiction. Okay, that's what I was wondering. If it's a jurisdiction issue. Justice Barberos? I guess my question was, with regard to the court's review of the record and discovery that this gentleman had not complied with previous court orders, all of those incidences resulted in sanctions of some sort that your client faced and dealt with at that time. So there were not, like, any pending orders that he was not in compliance with. Correct. Those had all been remedied, for lack of a better word, in the past. And I don't even believe that they were more discovery sanctions. I think they were more failure to pay certain... health expenses, things like that, that he had not paid. But yes, he had paid, and I believe at the time he was in compliance with everything. I think the last court order that was in it was maybe in 2017, prior to this filing in 2024. And I may be wrong about that, Your Honor, but that's just from my memory. I believe it was 17. And just on that, as far as not... And I know I keep bringing it up, but there was no motion on file. There wasn't even an oral motion. This court, in Godfrey Health Care and Rehab, where the plaintiff made an oral motion for a default judgment, this court said, and I'm quoting, Contrary to plaintiff's assertion, plaintiff was obligated by court rules and common courtesy to notify the defendant the plaintiff intended to present an oral motion for default. In that case, in Godfrey, the defendant requested a vacate, and the defendant had appeared, answered the complaint, and the court said that because of that, they were entitled to notice on the motion for default. I mean, my client didn't even get that common courtesy from the court itself. And one other thing, at the end of the transcript, the judge says, Well, maybe if you get an attorney, they can help you with this. Obviously, that didn't work out. I wouldn't be here in front of you judges. That's all I have, unless you have any questions for me. Okay.  Thank you. Ms. Johnson, you'll have a few moments for rebuttal. Thank you. After Ms. Lubbers. May it please the Court. Counsel, my name is Whitney Lubbers, and I represent the appellee, Lisa Renzin, now known as Lisa Reynolds. The appellant's motion to vacate contained only one assertion, that he was without assistance of counsel at the court's hearing on January 30th, 2025, and that he did not fully understand the ramifications of his failure to file an answer in the matter. That is not a reasonable term or condition that would fall under the court's discretion in granting the motion to vacate under 213.01. He wasn't obligated to file an answer, was he? He only needed to file a response or claim. He could have filed a motion to dismiss, for example. And he filed nothing. When you talk about ramifications, you're imposing pretty sophisticated lawyering on a pro se individual. But maybe you take the position that because of his experience in this case, he was not as inexperienced as I might think. I would agree with that, Your Honor. He has a long history of failure to comply with the court's order, and that was the court's ruling. He was served with notice of this motion on November 14th. And actually in the transcript, he acknowledges that he's not entitled to the post-salary increases that my client had earned from the period of dissolution until her retirement, and then states he wants a lawyer. He stated that he wanted to do that also on December 17th, and he did not. The December 17th entry clearly stated that the respondent failed. Our respondent has to file an answer within 14 days, and that cause was set for hearing on January 30th. He appeared on January 30th and admitted that he had not successfully filed anything. He had no documentation showing any rejected filing. There's no motion for leave to file. There's no evidence of any diligence then or in the motion to vacate. There was no attachment of an email back to Mr. Rensing, documentation, or an affidavit from the clerk's office indicating that Mr. Rensing showed up in their office asking to file via paper. If he doesn't, I think you have to quote him in the transcript that he doesn't do well with computers. The clerk's office offers other ways to handle that. They have very detailed instructions. Do you think you have jurisdiction to set this aside? I do, Your Honor. What this is, this was not a modification of the marital settlement agreement. This was a clarification and an implementation of what was in the marital settlement agreement. The court order acceptable for processing that was entered in 2014, and paragraph 12 actually states that the court retains jurisdiction to enforce, revise, modify, or amend this order insofar as necessary to establish or maintain its qualifications or to amend the order for other reasons. It was a pretty significant amendment, or not? Your Honor, I think what's also relevant is that the Office of Personnel Management in 2016 unilaterally, so after the entry of the marital settlement agreement and the entry of this court order acceptable for processing, unilaterally changed its requirements as far as what's the annuity supplement. And the Office of Personnel Management actually was addressing this issue in the Federal Circuit Court of Appeals, which a ruling was just handed down October 10th, so after the period of time for briefing, where the Circuit Court of Appeals has indicated that the Office of Personnel Management incorrectly addressed benefits to a former spouse that aren't in the order. Would you say that when you talk about this case from the Tenth Circuit, did you say? It's the unadministrative level, Your Honor. Okay, so are they saying that the Office of Administrative Management incorrectly applied these orders? Yes. On their own? On their own. So that decision from October 10th in the United States Court of Appeals for the Federal Circuit is 2024-1774. The judgment indicated that before 2016 and for almost 30 years, Office of Personnel Management did not include the annuity supplements in the calculation. So the annuity supplement, the Federal Government recognizes that Federal employees can retire prior to Social Security age. This annuity supplement is essentially their Social Security until they're able to receive that. So before 2016, when this marital settlement agreement was negotiated and this court order acceptable for processing was entered, OPM, the Office of Personnel Management, did not include the annuity supplements in calculation of annuity benefits to be paid to a former spouse, except under certain circumstances where the state court order expressly addressed the annuity supplement. They previously considered that to be a Social Security-type benefit and thus not allocable to a former spouse. So in 2016, OPM unilaterally, without proper procedure requesting comments, reversed the way that it apportioned annuity supplements. Under OPM's new interpretation, if a court order required the basic annuity to be divided, so the first supplement, which he was entitled to pursuant to the marital settlement agreement, the retiree's annuity supplement must also be divided the same way, even if the court order did not expressly provide for that in its court order. So are you arguing that the federal government amended this dissolution agreement? And so what you were asking to do was not amend or modify the agreement, but to enforce what was there? That's correct, Your Honor. And that's why you had jurisdiction. It wasn't a modification. That's correct. The marital settlement agreement was never modified. He receives 50% of the first pension. It says nothing about cost of living increases. It says nothing about the annuity supplement. And it's clear that it's not just the marital share, but it's 50% of the marital share that's accumulated during the marriage. Following the dissolution, my client continued to work, continued to increase her pay, which she's entitled to her top three. It's an average of her top three. So Mr. Renzi essentially is benefiting from her continued work. And over time, following the parties' dissolution of their marriage, the Office of Personal Management required that amended court order acceptable for processing to act. My client tried to address that on her own, and she received a letter saying this is what we're doing. Even though the order did not require them to do so, they unilaterally decided to do that. So now the Federal Court of Appeals has indicated that continuing to allow the Office of Personal Management to allocate the annuity to a former spouse that is not expressly provided for in a court order would result in the Office of Personnel Management effectively rewriting divorce decrees and departing from the express will of the parties. They now require that when only to apportion that when it's expressly provided for in a court order. Further, I believe that Respondent Fitzsimmons has forfeited a majority of the arguments in the brief. The only argument in the motion to vacate was that Mr. Renzi didn't have counsel and he didn't understand the ramifications. Mr. Renzi had been consistently represented by counsel at the time of the party's dissolution in 2014. He admitted to the court on January 30th that he had spoken to an attorney, that he had not retained her, but he had plenty of notice to be able to do that. I don't believe the courts could find that just because he didn't know or that he failed to act and hire an attorney would be a reason given his history and lack of failure to comply. Can we address the reasonableness, though, of the default order being entered without any request for a default, without any suggestion of request, without this particular litigant being advised that he may be defaulted if he didn't comply with that rule? Sir, I believe it's reasonable because he received no notice, he was served with summons. The courts in... In matters of what, though? The bill simply requests to modify. He acknowledges on... But he appeared on that. He appeared on the first appearance date. He was given a court order, how you respond, file an answer within 14 days, be back on this date for further hearing. He showed up at that further date. Allegedly, from what I've seen in the record, he attempted to file something. We don't know exactly what, but he attempted to file something more than one time and was technically unable to do so. Now, whether he had other options may be true. But is it reasonable under those circumstances? And obviously, as an attorney, if I said, if the shoe were on the other foot, you would have plenty of reasons to think it wasn't reasonable. But how reasonable is that after a pro se litigant attempts, pays the answer fee, and is unsuccessful but shows up to court? Doesn't just avoid it by saying, well, I'm not going to show up. There's no indication in the record that he did file that. He claims that, but there's... He provided no evidence of that. He didn't bring a copy of the rejection. He didn't bring any acknowledgement that he has tried to do that. In addition, at that hearing, he acknowledged and agreed that he shouldn't be entitled to anything that she earned after. Okay, that is exactly what I'm asking about. With regard to the hearing that Judge Brandemeier entered the default judgment on, did Judge Brandemeier, was Judge Brandemeier advised by this pro se litigant that, Judge, I paid the fee, I tried to upload or download or whatever it is, my answer, and it continued, was rejected. Was that testimony that he gave to the court? I believe so, and the court responded that, well, you can go into the clerk's office. You can show up... Okay, and I understand that there's another option, but regardless of that, was there any... Was there any evidence or testimony to contradict what he said he had tried to do? I'm assuming it was just the court asking him what may be done. Yes, and I argued that I didn't find that to be credible or reasonable because there's no... He would not have been required to pay a filing fee because this was a post-judgment motion. That filing fee had already been paid, so it was unclear as to why he would be required to pay an additional filing fee. That was my response, and I believe the court took that into consideration. I see, okay. So you argued credibility? Yes, Your Honor, not only in this proceeding, but in the history of this case. I believe this is a longstanding disregard for the court's authority. He has consistently failed to follow court orders. I do want to respond to counsel's argument that he has been or at the time was current in his obligations. The only... He's not. My client had, on her own, obtained a court order requiring that what he was receiving at the time from her retirement be applied to his child support during the child support obligation, which was in the tens of thousands. I apologize, I don't have that exact number. But that's not before us. It's not part of the appeal here, right? That's correct, Your Honor. But I also think it goes to his credibility, his willingness to follow court orders, and the fact that he has always failed to comply. But we don't know that the issue on child support was considered by the trial judge. I believe it is ruling the court. He generally talks about his failure to abide by things. Yes, and the petitions were rules to show cause that had to be filed, which were directly related to his failure to pay child support. I see. Okay. Anything else? No, Your Honor. Thank you for your time. Thank you. Thank you, Justices. Thank you very much for your argument, Ms. Zuber. Ms. Johnson, do you have some rebuttal? Yes, Judge, briefly. I think paragraph 12 of the court order acceptable for processing references maintain qualifications. I think that means maintain qualifications with the plan. So if the name of the plan changes later on or if distributions change later on, I think that that's what that paragraph is in reference to. It doesn't mean that you can modify a property settlement 10 years after it's entered. It doesn't mean that, oh, well, if you decide to modify it 10 years later, you can just come in and change this. The order that was entered after the modification was allowed by default was that the OPM shall pay the former spouse 50% of the marriage share of the retiree's plan. The marriage shall be calculated using the new operator, sorry, which is 208, which is the total number of months the member participated in the plan. During the marriage of the parties, OPM shall not apply salary adjustments after the date of divorce of September 29th when computing the former spouse's share of the employee annuity. So basically what happened there is she took out her salary adjustments. I don't know that salary adjustments are very different from cost of living increases. Many members of the military stay in the military well after their divorce, and their salaries go up. They become generals. Their salaries, they go from E6 to E8, E10. They go up. And the courts, no one comes back into court and asks to modify those, and when they do, this court shuts them down. This court says no. That's the reserved jurisdictional approach. It's not allowed. And the appellate wants to say that I can't argue that, but I think I have to argue that, because when ruling on a motion to vacate, this court, the reviewing court, must determine whether the trial court's decision was a fair and just result, which did not deny the moving party of substantial justice. I don't know how my client could not be denied substantial justice when the default judgment basically modified a court order from 10 years prior. So I believe that the order should be reversed. I believe the judge was wrong. I believe it should have been vacated. We should have been allowed to argue it. And even then, maybe the court will say that we're wrong, that the appellant's wrong, that you can modify that. You can disregard her salary adjustments. But the longer she worked, my client's percentage kept going down and down and down, and that's how it works. This court has ruled that on many occasions with military retirement pensions. So all I'm asking, Your Honors, is that we have a fair chance to get in front of a judge and say, You can't do this. You don't have jurisdiction to do this. And then, I guess, if he says he does, we might be back in front of you again. But I think both orders should be reversed, Your Honors. I don't have anything further. Thank you. Thank you, Ms. Johnson. Thank you, Mr. Edwards, for your arguments here today. This matter will be taken under advisement. We'll issue an order and be enforced.